UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| CHAMBERS OF<br>BRENDAN A. HURSON<br>UNITED STATES MAGISTRATE JUDGE | 101 WEST LOMBARD STREET<br>BALTIMORE, MARYLAND 21201<br>(410) 962-0782<br>MDD_BAHChambers@mdd.uscourts.gov |

September 14, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:    *Charles H. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
       Civil No. 22-3331-BAH

Dear Counsel:

On December 23, 2022, Plaintiff Charles H. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 7), the parties' dispositive filings[1] (ECFs 10 and 13), and Plaintiff's reply (ECF 14). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard I will DENY Plaintiff's motion for summary judgment, REVERSE the SSA's decision, and REMAND the case to the SSA for further consideration. This letter explains why.

I.    **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") benefits on April 14, 2020, alleging a disability onset of December 10, 2016. Tr. 89–95. Plaintiff's claim was denied initially and on reconsideration. Tr. 94–96. On December 14, 2021, an Administrative Law Judge ("ALJ") held a hearing.[2] Tr. 43–75. Following the hearing, on January 5, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[3] during the relevant time frame. Tr. 9–42. The Appeals Council denied Plaintiff's request for

---

[1] Standing Order 2022-04 amended the Court's procedures regarding Social Security appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, parties are to file briefs rather than motions for summary judgment. Here, Defendant filed a brief, and Plaintiff filed a motion for summary judgment.

[2] Plaintiff's case first went before an ALJ on September 7, 2021, but was continued at Plaintiff's request to allow Plaintiff to obtain counsel. Tr. 76–88.

[3] 42 U.S.C. §§ 301 et seq.

*Charles H. v. Kijakazi*
Civil No. 22-3331-BAH
September 14, 2023
Page 2

review, Tr. 1–6, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II. THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since December 10, 2016, the alleged onset date." Tr. 14. At step two, the ALJ found that Plaintiff suffered from the severe impairment of bipolar disorder.[4] Tr. 15. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 19. The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: able to perform simple routine and repetitive tasks; able to interact with supervisors, co-workers and the public on an occasional basis.

Tr. 22. The ALJ determined that Plaintiff was unable to perform any past relevant work but that he could perform other jobs that existed in significant numbers in the national economy, including the job of Laundry Worker II (DOT[5] #361.685-018), Office Helper (DOT #239.567-010), and Assembler (DOT #706.684-022). Tr. 35–37. Therefore, the ALJ concluded that Plaintiff was not

---

[4] The ALJ's opinion references several other potential impairments raised by Plaintiff's records but makes no explicit findings regarding non-severe impairments. *See* Tr. 15–19.

[5] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*Charles H. v. Kijakazi*
Civil No. 22-3331-BAH
September 14, 2023
Page 3

disabled.  Tr. 37.

### III.  LEGAL STANDARD

As noted, the scope of this Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  It is "more than a mere scintilla . . . and somewhat less than a preponderance."  *Id*.  In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence.  *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.  ANALYSIS

Plaintiff raises several arguments on appeal, specifically that the ALJ erroneously: (1) found that Plaintiff had no severe medically determinable physical impairments; (2) failed to give Plaintiff's "additional mental health impairments" proper consideration; (3) failed to properly consider Plaintiff's subjective complaints; (4) failed to properly evaluate the medical opinions of Plaintiff's treating providers, Julianne Tortolano, LPC, and Sergey Istomin, CRNP-PMH; and (5) failed to properly explain how the formulated RFC accounted for Plaintiff's limitations.  ECF 10-1, at 16 –39.[6]  Defendant counters that "[t]he ALJ's findings at all steps of the sequential evaluation are consistent with applicable regulations and caselaw, reasonable, and well-supported via a full consideration of Plaintiff's records."  ECF 13, at 6.

The Court begins by examining Plaintiff's argument regarding the ALJ's analysis of the medical opinion of Julianne Tortolano, LPC, as it finds this argument to be dispositive in this case.[7]  The process an ALJ must follow when evaluating medical opinions is well established.  "For claims filed after March 27, 2017, an ALJ must follow certain procedures when assessing the weight to which medical opinions are entitled."  *Adrianna S. v. Comm'r of Soc. Sec.*, Civ. No. SAG-20-3136, 2022 WL 112034, at *1 (D. Md. Jan. 12, 2022) (citing 20 C.F.R. § 404.1520c).  An ALJ is required to "articulate . . . how persuasive [the ALJ] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record."  *Id*. (citing 20 C.F.R.

---

[6] Page numbers cited refer to the ECF-generated page numbers at the top of each page.

[7] Plaintiff rightly notes that the ALJ incorrectly attributed a November 23, 2021, statement exclusively to Sergey Istomin, CRNP-PMH, when it was signed by both Nurse Istomin and Ms. Tortolano.  ECF 10-1, at 34; Tr. 1567.  The ALJ's analysis of Ms. Tortolano's persuasiveness as a medical source focuses solely on her October 5, 2021, letter.  Tr. 33.

§ 404.1520c(b)). Supportability and consistency are the most important factors when considering the persuasiveness of medical opinions. *Id*. (citing 20 C.F.R. § 404.1520c(b)(2)). Therefore, the ALJ is required to "explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions . . . in [the ALJ's] . . . decision." *Id*. Consistency generally refers to the consistency between the opinion and "the evidence from other medical sources and nonmedical sources in the claim." *Id*. (citing 20 C.F.R. § 404.1520c(c)(2)). Supportability generally refers to "the objective medical evidence and supporting explanations presented by a medical source[.]" *Id*. (citing 20 C.F.R. § 404.1520c(c)(1)).

"Strictly speaking, 'supportability' concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec*., Civ. No. 20-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citations omitted); *see also Mary W. v. Comm'r of Soc. Sec*., Civ. No. 20-5523, 2022 WL 202764, at *10 (S.D. Ohio Jan. 24, 2022) ("For the ALJ to have adequately discussed the supportability of . . . opinions, the ALJ needed to evaluate what the [physicians] said they based their opinions on—not simply how their opinions compared to the record evidence as a whole, which only goes to . . . consistency[.]"), *report and recommendation adopted sub nom. Wiseman v. Comm'r of Soc. Sec*., Civ. No. 20-5523, 2022 WL 394627 (S.D. Ohio Feb. 9, 2022). As such, this Court has noted that supportability must be considered independently from consistency. *See Duane H. v. Kijakazi*, Civ. No. JMC-20-3673, 2021 WL 8314949, at *3 (D. Md. Dec. 29, 2021) (recognizing that to consider supportability "in conjunction with" consistency "would conflate the nuances of those factors."). This Court has made clear that an analysis of the consistency of an opinion with other opinions from the same provider and the rest of the record is not sufficient to constitute a supportability analysis. *See Carlos F. v. Kijakazi*, Civ. No. BAH-22-2049, 2023 WL 3293086, at *4–5 (May 5, 2023) (finding that analysis of inconsistency between two opinions of one medical source was insufficient to assess supportability). The ALJ must assess the relevance of "the objective medical evidence and supporting explanations presented by a medical source" to the ultimate finding advanced by that medical expert. 20 C.F.R. § 404.1520c(c)(1).

Here, the ALJ found "not persuasive" a report dated October 5, 2021, from Ms. Tortolano, one of Plaintiff's treating providers. Tr. 33, 1559–60. Ms. Tortolano opined that Plaintiff experienced "debilitating symptoms" and suffered from a severe condition that "interferes with basic work-related activities, specifically as it pertains to attention and completing basic tasks." Tr. 1559–60. The ALJ found Ms. Tortolano's report unpersuasive because it was "unsupported by" Plaintiff's daily activities and the treatment records from Ms. Tortolano's agency. Tr. 33.

The ALJ's analysis here blurs the line between the consistency and supportability factors. Though the ALJ uses the word "supported" in this evaluation of Ms. Tortolano's report, much of this analysis concerns the question of consistency, not supportability. *See* 20 C.F.R. § 404.1520c(c)(2) (defining consistency factor analysis as consideration of alignment between source being evaluated and the record as a whole). The ALJ's determination that Ms. Tortolano's opinion was "not supported" by Plaintiff's activities amounts to a comparison between the opinion and the rest of the record for consistency. Thus, the portion of the ALJ's evaluation regarding the relationship between the treatment records from Ms. Tortolano's agency and her report must bear

*Charles H. v. Kijakazi*
Civil No. 22-3331-BAH
September 14, 2023
Page 5

the full weight of the supportability analysis.

The ALJ found that Ms. Tortolano's report was "unsupported by the mental health records from [Ms. Tortolano's agency] consistently reporting any reported psychiatric symptoms were well-controlled with medication. (*See i.e.* Exhibit 8F/261, 268, 274, 281, 288, 294, 301, 308, 315, 322, 330)." The ALJ's use of the term "i.e." to introduce the exhibits in this citation indicates that these exhibits are the conclusive list of documents that support the ALJ's point. *See* "*i.e.*," Legal Information Institute, https://www.law.cornell.edu/wex/i.e. (Apr. 2022) [https://perma.cc/BMX9-QREM] **(**explaining the words following an introductory phrase of "i.e." are intended to "clarify or explain" the preceding statement; contrasting "i.e." with the abbreviation "e.g.," which indicates that the phrases following are examples). The ALJ specifically mentions that Ms. Tortolano's report is unsupported by the records because the records "consistently" showed that Plaintiff's symptoms were well-controlled with medication. Tr. 33. However, closer examination of the ALJ's citations to Exhibit 8F reveals that each page to which the ALJ cites contains exactly the same content, a single diagnostic report from 2018, which both parties acknowledge appears to be reproduced and appended to the end of the notes from each of Plaintiff's treatment sessions. *See* ECF 13, at 16; ECF 10-1, at 32.

Finding that one single report is inconsistent with a provider's overall opinion alone does not equate to an adequate supportability analysis. *See Carlos F.*, 2023 WL 3293086, at *4 (finding that ALJ's assertion of inconsistencies between a provider's medical opinions went only to the question of consistency when provider made "no reference to any of his previous assessments" in opinion being evaluated). The ALJ here did not make any other attempt to explore Ms. Tortolano's "diagnostic techniques, data collection procedures/analysis," or methods of examination. *Reusel*, 2021 WL 1697919, at *7 n.6. As such, the ALJ's decision fails to adequately address, as it must, "the objective medical evidence and supporting explanations presented by" Mr. Tortolano. *See* 20 C.F.R. § 404.1520c(c)(1). This error is not harmless. Had the ALJ appropriately considered the supportability of Ms. Tortolano's opinion, they may have come to a different determination of the weight that opinion should have been given. This revised weight could have, in turn, altered Plaintiff's RFC, and potentially impacted the determination of whether Plaintiff is disabled. Thus, remand is required.

On remand, the ALJ should explicitly assess the supportability of Ms. Tortolano's medical opinion pursuant to 20 C.F.R. § 404.1520c(c)(1). In remanding for further explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct. Because the case is being remanded on other grounds, I need not address Plaintiff's other arguments. On remand, the ALJ is welcome to consider these arguments and make any required adjustments to the opinion.

V.     **CONCLUSION**

For the reasons set forth herein, Plaintiff's motion for summary judgment, ECF 10, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

*Charles H. v. Kijakazi*
Civil No. 22-3331-BAH
September 14, 2023
Page 6

    Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

                                           Sincerely,

                                             /s/

                                           Brendan A. Hurson
                                           United States Magistrate Judge